1   David Poore Turner, SBN 192541
    BROWN | POORE LLP
2   1350 Treat Blvd., Suite 420
    Walnut Creek, California 94597
3   Telephone:      (925) 943-1166
    Facsimile:      (925) 955-8600
4   dpoore@bplegalgroup.com

5   Attorneys for Plaintiff
    ZOLTAN NAGY

6

7

8                **UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10  ZOLTAN NAGY,                          | **Case No.**

11              Plaintiffs,               | **COMPLAINT FOR DAMAGES,**
                                            **EQUITABLE AND/OR INJUNCTIVE**
12                                          **RELIEF**
    v.
13                                          VIOLATIONS OF THE CALIFORNIA
                                            FAIR EMPLOYMENT & HOUSING ACT
14  UNITED SCHUTZHUND CLUBS OF              ("FEHA"), CALIFORNIA GOVERNMENT
    AMERICA; JIM ALLOWAY, and DOES 1 to    CODE SECTION 12940; VIOLATIONS OF
15  10,                                     TITLE VII OF THE FEDERAL CIVIL
                                            RIGHTS ACT, 42 U.S.C. SECTION 2000e
16              Defendants.                 et seq.; VIOLATIONS OF THE FAIR
                                            LABOR STANDARDS ACT ("FLSA"), 29
17                                          U.S.C. SECTION 207 et seq, FAILURE TO
                                            PAY ALL WAGES AND OVERTIME;
18                                          WRONGFUL TERMINATION IN
                                            VIOLATION OF PUBLIC POLICY;
19                                          FAILURE TO PAY ALL WAGES, AND
                                            OVERTIME, CALIFORNIA LABOR
20                                          CODE SECTIONS 510, 554, 1194 et seq,
                                            1197 et seq, 1198, 1199, and related WAGE
21                                          ORDERS; VIOLATIONS OF
                                            CALIFORNIA LABOR CODE SECTION
22                                          226 et seq; VIOLATIONS OF THE
                                            CALIFORNIA UNRUH CIVIL RIGHTS
23                                          ACT, CALIFORNIA CIVIL CODE
                                            SECTIONS 51 et seq; DEFAMATION;
24                                          INTENTIONAL INTERFERENCE WITH
                                            PROSPECTIVE ECONOMIC
25                                          ADVANTAGE; DECLARATORY RELIEF

26                                          **JURY TRIAL DEMANDED**

27

28

-1-

1    Plaintiff ZOLTAN NAGY complain and allege as follows:

2

3                              **PARTIES AND JURISDICTION**

4        1.      Plaintiff ZOLTAN NAGY ("Plaintiff") is, and at all relevant times hereto, has been

5    a resident of the State of California.

6

7        2.      Plaintiff is an immigrant to the United States, whose national origin is from

8    Hungary.  Plaintiff speaks with a Hungarian accent.

9

10       3.      Plaintiff is informed and believe and thereby allege that Defendant UNITED

11   SCHUTZHUND CLUBS OF AMERICA ("Defendant" or "USCA") is a company that conducts

12   business in the State of California, but whose principal place of business is located in Arnold,

13   Missouri.  Defendant USCA is an organization that hosts, sponsors, and operates German Shepherd

14   working dog shows, competitions, and trials.

15

16       4.      Plaintiff is informed and believe that Defendant JIM ALLOWAY ("Defendant" or

17   "Alloway") is an individual who was, at all relevant times, an officer, director, supervisor, or

18   managing agent of Defendant USCA.  Defendant Alloway is a resident of the State of Ohio.

19

20       5.      Defendant USCA was an employer in this judicial district, within the territory of the

21   Northern District of California, San Francisco Division.

22

23       6.      This Court has jurisdiction and venue over this action in that Defendant USCA

24   employed Plaintiff Zoltan Nagy within this judicial district in the State of California, and Plaintiff

25   Zoltan Nagy is seeking relief under federal law, including the Fair Labor Standards Act, 29 U.S.C.

26   Sections 207 et seq, and Title VII of the Civil Rights Act, 42 U.S.C. Sections 2000e et seq.  This

27   Court further has jurisdiction over this matter, as there exists complete diversity of citizenship

28

between the Plaintiff and the Defendants, and the amount in controversy exceeds $75,000.00.  This Court has supplemental jurisdiction over any state law claims, in that they arose from the same common nucleus of operative facts, as the federal claims.

7.     Plaintiff has exhausted all necessary remedies prior to filing this action, including obtaining a right to sue letter from both the California Department of Fair Employment & Housing ("DFEH"), and the federal Equal Employment Opportunity Commission ("EEOC").  Plaintiffs are filing this action within 90 days of receipt of the EEOC right to sue letter, and within one year of obtaining the right to sue letter from the DFEH.

8.     Unless otherwise indicated as acting in individual capacity, Plaintiff is informed and believe, and thereby allege that each of the defendants herein were at all times relevant hereto, the agents, representatives, servants and employees of the remaining defendants, and were acting at least in part within the course and scope of such relationship, and that the wrongful acts alleged herein were committed by such defendants, and each of them.

## **FACTUAL BACKGROUND**

9.     Plaintiff Zoltan Nagy has been a performance judge for all working dog breeds  in Schutzhund/IPO/IGP competitions and events for more than 25 years.  During that time, Plaintiff developed a very positive and unblemished reputation for being an experienced and outstanding judge, who was well respected both in the United States and internationally.  Plaintiff Nagy spent thousands of hours in education, training, and experience to develop his reputation for being an honest, trustworthy, and fair performance judge in the Schutzhund/IPO/IGP community, and he has devoted a significant portion of his professional life to Defendant USCA.

10.     Plaintiff was hired by Defendant USCA in 2015, as a Performance Judge, whose duties and responsibilities included attending performance competitions, judging the participants,

conducting training of probationary judges and other members of USCA who attend competition events, providing seminars on behalf of USCA, and attending required meetings and conference calls.  Additionally, Defendant USCA requires Plaintiff and other Performance Judges to attend the USCA Judges College every two years, and complete annual training requirements, which consist of USCA classes and other seminars.

11.    Moreover, Plaintiff and other Performance Judges are required at all times to promote the core values of Defendant USCA.  Pursuant to Defendant's written policies and procedures, Performance Judges, like Plaintiff, are considered "ambassadors" of the USCA, which are required to positively promote the USCA at any event or gathering, and they are required to serve as leaders in the organization through teaching and training at every level of the organization, including regional events.

12.    During the period of time that Plaintiff worked as a Performance Judge at USCA, Defendant improperly classified Plaintiff and other Performance Judges as independent contractors, instead of employees.  Under California law, in order to classify Plaintiff as an independent contractor, instead of an employee, Defendant USCA was required to establish three elements: (1) the Plaintiff was free from direction and control in the performance of the work, (2) the Plaintiff was performing work that is outside the scope of the usual course of the employer's business, and (3) the Plaintiff is customarily engaged in an independently established trade, occupation, or business that is of the same nature as the work performed for the employer, USCA.  In this case, Defendant USCA will be unable to establish any of these elements, as it treats its Performance Judges as employees, instead of independent contractors.  In summary, Defendant USCA directed and controlled Plaintiff's work as a Performance Judge throughout his employment at USCA, and the work that Plaintiff was performing for USCA was not outside the ordinary scope of USCA's business.  Furthermore, Plaintiff was not customarily engaged in any independently established trade or occupation that is the same nature as the judging work performed by USCA, his employer.

-4-

13.     Defendant USCA provides extensive direction and control to its Performance Judges, including Plaintiff.  Defendant USCA requires any potential judge to go through a hiring process that is similar to an employee.  Defendant USCA requires the Performance Judge to submit an application, a resume, letters of recommendation, and a criminal background check. The judge is also required to provide "vital statistics" for "insurance purposes." Once hired by USCA, the judge is required to serve as a Probationary Judge for a period of time, and, in order to pass the probationary period, the judge is required to complete a practical and written examination.  The probationary judge's name is then placed in the USCA's publication to its members, so that any members can lodge objections to the promotion of the judge to a permanent status.

14.     Defendant USCA also maintains an extensive written progressive disciplinary program for its judges.  The judge is required to adhere to Defendant USCA's written policies and procedures, and the failure to do so results in progressive discipline for the judge.  The progressive discipline consists of a verbal warning, a written warning, suspension, and then termination of the judge's employment.  Under the discipline program, the allegations against the judge are first reviewed and considered by the Judges Committee, which is managed by the Director of Judges, and, if the allegation is substantiated, it is then referred to the USCA Executive Board for review, and potential disciplinary action.

15.     Not only does Defendant USCA discipline judges in the course of the performance of their duties, Defendant USCA has the authority to discipline judges who breach a perceived duty of loyalty that is owed to the USCA.  In order to become a Performance Judge, the judge, like the Plaintiff, is required to positively promote USCA as an organization, and the judge must refrain from engaging in any behavior that reflects poorly on the USCA.  The USCA requires the judges to act as "ambassadors" of its organization, and it does not allow any judges to work at events unless the judge demonstrates positive character and integrity traits, including a lack of any felony

convictions.  Defendant USCA also has a mandatory retirement program once the judge reaches the age of 75 years old.

16.     Defendant USCA also has a "Code of Conduct" that the judges must comply with in order to work at any of the events.  The Code of Conduct expressly provides that Performance Judges are "representatives" of the USCA while judging, attending any recognized working dog event, and while traveling on any USCA or working dog event business.  The Code of Conduct prohibits a Performance Judge from training or showing any other dogs "for money" and it does not allow Performance Judges to work as professional working dog sports trainers or breeders, if a substantial portion of their income would come from such practices.  The Performance Judges are further subjected to a strict "dress code" which results in discipline if the judge violates the dress code requirements.

17.     Defendant USCA also limits the work that Performance Judges can do outside of the USCA organization.  Performance Judges are required to attend and judge at least four events per year, and they may not judge at other dog events that are not sanctioned by the USCA. Defendant USCA further limits where the judge can work within the organization itself. Performance Judges are not permitted to judge at their local clubs, and they may not preside over any local events that are not sponsored by the USCA.

18.     Defendant USCA further imposes an internal continuing education requirement on its judges.  The Performance Judges are required to attend the USCA Judges College at least every two years.  The judges are also mandated to pass yearly educational examinations, and attend required seminars, meetings, and conference calls for training purposes.  Performance Judges are also required to provide training and seminars to other employees.

19.     In summary, Defendant USCA directed and controlled all aspects of Plaintiff's work as a Performance Judge throughout his employment at USCA, and the work that Plaintiff was performing for USCA was not outside the ordinary scope of USCA's business.   Furthermore, Plaintiff was not customarily engaged in any independently established trade or occupation that is the same nature as the judging work performed by USCA, his employer.   Defendant USCA has improperly misclassified Plaintiff as an independent contractor, instead of an employee.

20.     For the past three years, during the period of time that Plaintiff was working as a Performance Judge for Defendant USCA, Plaintiff was required to work more than eight hours in one work day, but he did not receive any overtime compensation, in violation of California law. During longer competitions and events, on several occasions Plaintiff worked more than 40 hours in one work week, but Plaintiff did not receive any overtime compensation, in violation of federal law.

21.     For the past three years, Plaintiff was not provided with a minimum wage for a significant amount of the work that Plaintiff performed, and, during this period of time, Plaintiff was not provided with any itemized wage statements, in violation of California law.

22.     Although Defendant USCA has misclassified its Performance Judges for years, this current dispute started in May 2019.

23.     Defendant USCA held its 2019 Working Dog Championship competition from May 2–5, 2019, in Boston.   Plaintiff was assigned to work as a Performance Judge during this competition, and he spent more than 40 hours in one work week, including traveling, to work at the competition in Boston.

24.     On May 2, 2019, Plaintiff was approached by Defendant Alloway, who criticized the manner in which Plaintiff was doing his job with one of the helpers.  Defendant Alloway was a member of the USCA Executive Board, who had previously exhibited animosity towards Plaintiff as an "immigrant" and a "foreign judge."  After a heated exchange, Defendant Alloway became angry and told Plaintiff that he would never work as a judge "in this country" again.

25.     Defendant Alloway was a supervisor in the workplace, who created a hostile work environment for Plaintiff, based upon his national origin.  Defendant Alloway would consistently and pervasively make comments, jokes, and taunt Plaintiff for being an "immigrant" and a "foreign" judge, and questioned how he could  be allowed to judge dog competitions in the United States.

26.     Moreover, Defendant USCA considers itself to be a patriotic organization, who sets different and additional standards for "foreign judges" and "foreign" members.  Its official colors in its bylaws are red, white, and blue, and at least one of its Executive Board members has an email handle, "rebelyelle."

27.     Later that evening, after the heated exchange with Defendant Alloway, Plaintiff returned to his hotel and requested to speak with the President of the Defendant USCA's Executive Board.  During the meeting, Plaintiff made an internal complaint of bias and discrimination against Defendant Alloway, and Plaintiff requested the President's assistance.  That same day, the President assured the Plaintiff that he would talk to Defendant Alloway about the allegations of discrimination and bias. The Director of Judges was also made aware of the Plaintiff's internal complaint of bias and discrimination against Defendant Alloway and this information was relayed to Defendant Alloway.

28.     Once Defendant USCA became aware of Plaintiff's internal complaint of bias and discrimination, it failed to conduct any reasonable investigation into the allegations, and it failed to take reasonable measures to ensure the conduct would not continue in the workplace.

29.     Instead of taking reasonable measures to stop the discriminatory behavior, Defendants elected to retaliate against the Plaintiff.

30.     On or about May 7, 2019, only a few days later, Defendant Alloway prepared a disciplinary report for the Judges Committee requesting that the Committee recommend the implementation of unspecified discipline or adverse actions against Plaintiff for his alleged conduct on May 2nd during the 2019 Championships.  At the end of the report, Defendant Alloway wrote a personal statement to the Committee to demonstrate why Plaintiff lacked the appropriate character and integrity to be a Performance Judge.  In his personal statement, Defendant Alloway encouraged the Board to discipline Plaintiff, as Plaintiff made a "vile" complaint of discrimination against him.

31.     Defendant Alloway's report, and its subsequent review by the Judges Committee, violated Defendant USCA's internal policies and procedures for the discipline of judges.  The report was not notarized, as required by Defendant's bylaws, and the report and review suffered from a conflict of interest.

32.     Despite these deficiencies, the Judges Committee recommended to the Executive Board that Plaintiff be suspended as a Performance Judge for a period of at least one year.  Shortly thereafter, the Executive Board agreed, and it issued a one-year suspension of the Plaintiff, which would be published in their magazine to its members and the public.

33.     Plaintiff disagreed with the findings, and he requested that Defendant USCA conduct an immediate investigation, as Plaintiff believed that the actions were the result of bias,

unequal, and discriminatory treatment.  Plaintiff's request was denied by the President of Defendant USCA's Executive Board.

34.    As a result, Plaintiff was compelled to retain legal counsel, who advised the Defendants of the deficiencies contained in the disciplinary process, including the fact that the report was not notarized, it was the result of a conflict of interest, and the Executive Board had failed to allow Plaintiff to speak on his own behalf at the disciplinary meeting, as required by Defendant's bylaws.

35.    Defendants admitted that they failed to comply with their own policies and procedures, and, instead of taking appropriate action, Defendants elected to retaliate against Plaintiff again.  On June 25, 2019, Defendant Alloway submitted his same report, but this time he had the report notarized.  Nothing else changed.

36.    The report was again forwarded to the Judges Committee, who again recommended disciplinary action to the Executive Board, which Defendant Alloway is a member.

37.    The Executive Board rubber-stamped the Alloway report, and it issued a one-year suspension against the Plaintiff, which was published in Defendant's website and magazine for its members and the public, and Plaintiff was advised that he would not be allowed to attend the Judges College, which is required for his license.  During this process, the Executive Board advised Plaintiff that it had considered "additional" matters that were discovered during its "investigation" which apparently demonstrated that Plaintiff lacked the character and integrity to serve as a Performance Judge.  The Executive Board also believed that Plaintiff acted improperly when he accused "Jim Alloway of being an 'anti-immigrant' and racist."

38.     In acting above, Defendant USCA further violated its written policies and procedures, when it failed to provide the required 30-day time period in which to respond to any disciplinary recommendation.  On both occasions that the Executive Board considered the Alloway report, it failed to provide Plaintiff with the required 30-day period in which to respond.

39.     The Executive Board also considered "new" or "additional" matters that were apparently uncovered during its review and investigation of this matter, without complying with the complaint review process.

40.     Despite the fact that Defendants failed to follow their own written procedures, it upheld a one-year suspension for Plaintiff, and denied his access to the Judges College, which was published in its magazine and website, thus causing Plaintiff irreparable harm to his reputation, and which constitutes slander per se, as it impacts Plaintiff's occupation.  Plaintiff requested that the material be removed from Defendants' publications.  Defendants refused.  The false allegations published on the website have significantly damaged Plaintiff's reputation in the dog training community, and it has caused him both emotional distress and financial harm.

41.     As a result of this action, Plaintiff is prevented from working as a Performance Judge at any dog sport related event, which results in his constructive termination of his employment at USCA.  The adverse actions against Plaintiff were discriminatory in nature as they were based upon his national origin, and they were the result of retaliation in the workplace.

## **FIRST CAUSE OF ACTION**

(Violations of Title VII of the Civil Rights Act – Discrimination – Defendant USCA only)

42.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 41 of this Complaint as though fully set forth herein.

-11-

43.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-2 et seq provide that it is an unlawful employment practice for an employer to discriminate on the basis of race or national origin in the terms and conditions of employment.

44.     Defendant USCA violated Title VII with regard to Plaintiff when it discriminated against Plaintiff on the basis of his race and national origin.

45.     Defendants' conduct toward Plaintiff as alleged above, constitutes an unlawful employment practice in violation of Title VII.

46.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered loss of employment, indignity, great humiliation and emotional distress manifesting in physical symptoms.

47.     Defendant's actions have caused and continue to cause Plaintiff substantial losses in earnings, significant reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages, attorneys' fees, medical expenses, future earnings and benefits, cost of suit, humiliation, embarrassment and anguish, all to his damage in an amount according to proof.

48.     The acts of the Defendants as alleged herein, were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure Plaintiff and to cause mental anguish, anxiety, and emotional distress.  The acts of the employer Defendant were further committed by managing agents, officers, and/or directors of the Defendant, or ratified by the Defendant.  The Defendant's acts were done in conscious disregard of the risk of severe emotional harm to Plaintiff and with the intent to injure Plaintiff, constituting oppression, fraud, malice under California Civil Code §3294, entitling plaintiff to punitive damages.

-12-

## SECOND CAUSE OF ACTION

(Violations of Title VII of the Civil Rights Act – Retaliation – Defendant USCA only)

49.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 48 of this Complaint as though fully set forth herein.

50.    Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-2 et seq provide that it is an unlawful employment practice for an employer to retaliate against an employee who engages in protected activity in the workplace, including making internal complaints of discrimination in the workplace.

51.    Defendant violated Title VII with regard to Plaintiff when it retaliated against Plaintiff for making internal complaints of discrimination, and opposing unlawful employment practices.

52.    Defendants' conduct toward Plaintiff as alleged above, constitutes an unlawful employment practice in violation of Title VII.

53.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered loss of employment, indignity, great humiliation and emotional distress manifesting in physical symptoms.

54.    Defendant's actions have caused and continue to cause Plaintiff substantial losses in earnings, significant reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages, attorneys' fees, medical expenses, future earnings and benefits, cost of suit, humiliation, embarrassment and anguish, all to his damage in an amount according to proof.

-13-

55.     The acts of the Defendants as alleged herein, were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure Plaintiff and to cause mental anguish, anxiety, and emotional distress.  The acts of the employer Defendant were further committed by managing agents, officers, and/or directors of the Defendant, or ratified by the Defendant.  The Defendant's acts were done in conscious disregard of the risk of severe emotional harm to Plaintiff and with the intent to injure Plaintiff, constituting oppression, fraud, malice under California Civil Code §3294, entitling plaintiff to punitive damages.

### THIRD CAUSE OF ACTION

(Violations of Title VII of the Civil Rights Act – Harassment – All Defendants)

56.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 55 of this Complaint as though fully set forth herein.

57.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-2 et seq provide that it is an unlawful employment practice for an employer to harass or create a hostile work environment based upon race or national origin.

58.     Defendants violated Title VII with regard to Plaintiff when they harassed and created a hostile work environment for Plaintiff based upon race and national origin.

59.     Defendants' conduct toward Plaintiff as alleged above, constitutes an unlawful employment practice in violation of Title VII.

60.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered loss of employment, indignity, great humiliation and emotional distress manifesting in physical symptoms.

61.     Defendant's actions have caused and continue to cause Plaintiff substantial losses in earnings, significant reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages, attorneys' fees, medical expenses, future earnings and benefits, cost of suit, humiliation, embarrassment and anguish, all to his damage in an amount according to proof.

62.     The acts of the Defendants as alleged herein, were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure Plaintiff and to cause mental anguish, anxiety, and emotional distress.  The acts of the employer Defendant were further committed by managing agents, officers, and/or directors of the Defendant, or ratified by the Defendant.  The Defendant's acts were done in conscious disregard of the risk of severe emotional harm to Plaintiff and with the intent to injure Plaintiff, constituting oppression, fraud, malice under California Civil Code §3294, entitling plaintiff to punitive damages.

## **FOURTH CAUSE OF ACTION**

(Violations of the California Fair Employment & Housing Act - Discrimination – Defendant USCA only)

63.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 62 of this Complaint as though fully set forth herein.

64.     California Government Code § 12940, et. seq., provide that it is an unlawful employment practice for an employer to discriminate on the basis of race and national origin in the terms and conditions of employment.

65.     Defendant USCA violated Government Code § 12940, et. seq. with regard to Plaintiff when it discriminated against Plaintiff on the basis of race and national origin.

66.     Defendant's conduct toward Plaintiff as alleged above, constitutes an unlawful employment practice in violation of California Government Code § 12940.

67.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered loss of employment, indignity, great humiliation and emotional distress manifesting in physical symptoms.

68.     Defendant's actions have caused and continue to cause Plaintiff substantial losses in earnings, significant reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages, attorneys' fees, medical expenses, future earnings and benefits, cost of suit, humiliation, embarrassment and anguish, all to his damage in an amount according to proof.

69.     The acts of the Defendants as alleged herein, were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure Plaintiff and to cause mental anguish, anxiety, and emotional distress.  The acts of the employer Defendant were further committed by managing agents, officers, and/or directors of the Defendant, or ratified by the Defendant.  The Defendant's acts were done in conscious disregard of the risk of severe emotional harm to Plaintiff and with the intent to injure Plaintiff, constituting oppression, fraud, malice under California Civil Code §3294, entitling plaintiff to punitive damages.

**FIFTH CAUSE OF ACTION**

(Violations of the California Fair Employment & Housing Act - Retaliation – Defendant USCA only)

70.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 69 of this Complaint as though fully set forth herein.

-16-

71.     California Government Code § 12940, et. seq. provide that it is an unlawful employment practice for an employer to retaliate against an employee for engaging in protected activity in the workplace, including making internal complaints of discrimination, or opposing unlawful employment practices.

72.     Defendant USCA violated Government Code § 12940, et. seq. with regard to Plaintiff when it retaliated against Plaintiff for making internal complaints of discrimination in the workplace, and opposing unlawful employment practices.

73.     Defendant's conduct toward Plaintiff as alleged above, constitutes an unlawful employment practice in violation of California Government Code § 12940.

74.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered loss of employment, indignity, great humiliation and emotional distress manifesting in physical symptoms.

75.     Defendant's actions have caused and continue to cause Plaintiff substantial losses in earnings, significant reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages, attorneys' fees, medical expenses, future earnings and benefits, cost of suit, humiliation, embarrassment and anguish, all to his damage in an amount according to proof.

76.     The acts of the Defendants as alleged herein, were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure Plaintiff and to cause mental anguish, anxiety, and emotional distress.  The acts of the employer Defendant were further committed by managing agents, officers, and/or directors of the Defendant, or ratified by the Defendant.  The Defendant's acts were done in conscious disregard of the risk of severe emotional

-17-

harm to Plaintiff and with the intent to injure Plaintiff, constituting oppression, fraud, malice under California Civil Code §3294, entitling plaintiff to punitive damages

### SIXTH CAUSE OF ACTION

(Violations of the California Fair Employment & Housing Act - Harassment – Defendant USCA only)

77.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 76 of this Complaint as though fully set forth herein.

78.     California Government Code § 12940, et. seq. provide that it is an unlawful employment practice for an employer or any person to harass or create a hostile work environment based upon race or national origin.

79.     Defendants violated Government Code § 12940, et. seq. with regard to Plaintiff when they harassed Plaintiff, and created a hostile work environment based upon race and national origin.

80.     Defendants' conduct toward Plaintiff as alleged above, constitutes an unlawful employment practice in violation of California Government Code § 12940.

81.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered loss of employment, indignity, great humiliation and emotional distress manifesting in physical symptoms.

82.     Defendants' actions have caused and continue to cause Plaintiff substantial losses in earnings, significant reputation and professional injury, loss of promotional opportunities and

other employment benefits, lost wages, attorneys' fees, medical expenses, future earnings and benefits, cost of suit, humiliation, embarrassment and anguish, all to his damage in an amount according to proof.

83.    The acts of the Defendants as alleged herein, were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure Plaintiff and to cause mental anguish, anxiety, and emotional distress.  The acts of the employer Defendant were further committed by managing agents, officers, and/or directors of the Defendant, or ratified by the Defendant.  The Defendant's acts were done in conscious disregard of the risk of severe emotional harm to Plaintiff and with the intent to injure Plaintiff, constituting oppression, fraud, malice under California Civil Code §3294, entitling plaintiff to punitive damages.

**SEVENTH CAUSE OF ACTION**

(Violations of the California Labor Code – Failure to Provide Itemized Wage Statements – Defendant USCA only)

84.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 83 of this Complaint as though fully set forth herein.

85.    In acting above, Defendant USCA failed to provide Plaintiff with any itemized wage statements, as required under California Labor Code Section 226.

86.    As a direct result of these violations, Plaintiff seeks damages, penalties, and other relief, as proven at trial.

-19-

## EIGHTH CAUSE OF ACTION

(Intentional Interference with Prospective Economic Advantage – All Defendants)

87.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 86 of this Complaint as though fully set forth herein.

88.    Defendants' conduct, as set forth above, constituted an intentional, reckless, and/or negligent interference with Plaintiff's prospective economic advantage as a Performance Judge in his community.  Plaintiff's entire career was devoted to dog training and competitions.  In acting above, Defendants intended to harm Plaintiff in her profession, and falsely characterize him as a judge who was unqualified and lacked character.  The acts of the Defendants fell well outside the compensation bargain, and they were retaliatory for Plaintiff engaging in protected activities.

89.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered loss of employment opportunities, indignity, great humiliation and emotional distress manifesting in physical symptoms.

90.    Defendants' actions have caused and continue to cause Plaintiff substantial losses in earnings, significant reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages, future earnings and benefits, cost of suit, humiliation, embarrassment and anguish, all to his damage in an amount according to proof.

91.    The acts of the Defendants as alleged herein, were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure Plaintiff and to cause mental anguish, anxiety, and emotional distress.  The acts of the employer Defendant were further committed by managing agents, officers, and/or directors of the Defendant, or ratified by the Defendant.  The Defendant's acts were done in conscious disregard of the risk of severe emotional

-20-

harm to Plaintiff and with the intent to injure Plaintiff, constituting oppression, fraud, malice under California Civil Code §3294, entitling plaintiff to punitive damages

## NINTH CAUSE OF ACTION

(Violations of the FLSA, 29 U.S.C. Section 207 et seq – Failure to Pay all Wages Due and Overtime – Defendant USCA only)

92.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 91 of this Complaint as though fully set forth herein.

93.     The Fair Labor Standards Act, 29 U.S.C. Section 207 et seq, requires the payment of overtime, if an employee works more than 40 hours in one work week.

94.     Defendant violated this provision of the FLSA with regard to Plaintiff when it failed to properly pay Plaintiff his owed overtime pay, when he worked more than 40 hours in one work week.

95.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages in an amount to be proven at trial.

96.     Defendant's conduct is properly characterized as "willful."

## TENTH CAUSE OF ACTION

(Declaratory Relief – Defendant USCA only)

97.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 96 of this Complaint as though fully set forth herein.

98.     As set forth above, an actual controversy exists over whether Defendant USCA properly classified Plaintiff as an independent contractor, as opposed to an employee.  As set forth above, Defendant USCA improperly misclassified Plaintiff as an independent contractor, when it should have classified Plaintiff as an employee.

99.     Accordingly, Plaintiff seeks a declaration by this Court that Plaintiff is, and at all relevant times was an employee of Defendant USCA.

## ELEVENTH CAUSE OF ACTION

(Violations of the California Unruh Civil Rights Act[1] – All Defendants)

100.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 99 of this Complaint as though fully set forth herein

101.     The Unruh Civil Rights Act, California Government Code §§ 51 et seq provides that all persons within this state are equal, regardless of race or national origin, and are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments.

---

[1] This cause of action is being pled in the alternative, in the event that the Court determines that an employment relationship did not exist between the parties.

COMPLAINT FOR DAMAGES, EQUITABLE, AND/OR INJUNCTIVE RELIEF
NAGY V. UNITED SCHUTZHUND CLUBS OF AMERICA. ET AL

102.    In acting above, Defendants violated the Unruh Civil Rights Act, when it took adverse actions against Plaintiff based upon his race or national origin.

103.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered loss of employment, indignity, great humiliation and emotional distress manifesting in physical symptoms.

104.    Defendants' actions have caused and continue to cause Plaintiff substantial losses in earnings, significant reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages, attorneys' fees, future earnings and benefits, cost of suit, humiliation, embarrassment and anguish, all to his damage in an amount according to proof.

105.    The acts of Defendants as alleged herein, were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure Plaintiff and to cause Plaintiff mental anguish, anxiety, and distress.  The defendants' acts were done in conscious disregard of the risk of severe emotional harm to Plaintiff and with the intent to injure Plaintiff, constituting oppression, fraud, malice under California Civil Code §3294, entitling Plaintiff to punitive damages.

### **TWELVE CAUSE OF ACTION**

(Violations of the California Labor Code – Failure to Pay all Wages Due and Overtime  – Defendant USCA only)

106.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 105 of this Complaint as though fully set forth herein.

107.    In acting above, Defendant failed to properly pay Plaintiff all of his owed overtime, as he worked more than eight hours in a workday in several occasions over the past three years, and further failed to pay Plaintiff a minimum wage for all work performed for his employer, Defendant USCA.

108.    As a result, Plaintiff seeks all available relief and damages, in an amount to be proven at trial.

**THIRTEENTH CAUSE OF ACTION**

(Wrongful Termination in Violation of Public Policy – Defendant USCA only)

109.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 106 of this Complaint as though fully set forth herein.

110.    It is the fundamental public policy of the State of California that employers, like the Defendant, shall not knowingly, intentionally, or recklessly retaliate against an employee that has reported illegal and discriminatory acts in the workplace, including maintaining a workplace free from discrimination and harassment.  These fundamental public policies are embodied in the California Fair Employment & Housing Act and Title VII of the Civil Rights Act, and other federal and state laws and regulations cited above.  These public policies of the State of California were substantial, fundamental, and well established at the time the Plaintiff was terminated.

111.    In acting as alleged herein, Defendant wrongfully terminated Plaintiff in violation of these public policies.

112.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered loss of employment, indignity, great humiliation and emotional distress manifesting in physical symptoms.

113.    Defendant's actions have caused and continue to cause Plaintiff substantial losses in earnings, significant reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages, attorneys' fees, future earnings and benefits, cost of suit, humiliation, embarrassment and anguish, in an amount according to proof.

114.    The acts of the Defendants as alleged herein, were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure Plaintiff and to cause mental anguish, anxiety, and emotional distress.  The acts of the employer Defendants were further committed by managing agents, officers, and/or directors of the Defendants, or ratified by the Defendants.  The Defendants' acts were done in conscious disregard of the risk of severe emotional harm to Plaintiff and with the intent to injure Plaintiff, constituting oppression, fraud, malice under California Civil Code §3294, entitling plaintiff to punitive damages.

## **FOURTEENTH CAUSE OF ACTION**

### (Defamation – All Defendants)

115.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 114 of this Complaint as though fully set forth herein.

116.    In acting above, Defendants published false and defamatory statements concerning Plaintiff's character in his profession and employment, constituting slander and libel per se.

117.    The defamatory statements published by Defendants were untrue, false, and not privileged.

118.    Defendants made the statements with the intent to harm Plaintiff in his chosen profession and employment.

119.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered loss of employment, indignity, great humiliation and emotional distress manifesting in physical symptoms.

120.    Defendant's actions have caused and continue to cause Plaintiff substantial losses in earnings, significant reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages, attorneys' fees, future earnings and benefits, cost of suit, humiliation, embarrassment and anguish, in an amount according to proof.

121.    The acts of the Defendants as alleged herein, were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure Plaintiff and to cause mental anguish, anxiety, and emotional distress.  The acts of the employer Defendants were further committed by managing agents, officers, and/or directors of the Defendants, or ratified by the Defendants.  The Defendants' acts were done in conscious disregard of the risk of severe emotional harm to Plaintiff and with the intent to injure Plaintiff, constituting oppression, fraud, malice under California Civil Code §3294, entitling plaintiff to punitive damages.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for judgment against Defendants, and each of them as follows:

1. For general damages in an amount according to proof;

2. For special damages in an amount according to proof;

3. For prejudgment interest in an amount according to proof;

4. For equitable, declaratory, and/or injunctive relief;

5. For statutory penalties and liquidated damages, if applicable;

6. For reasonable attorney's fees and cost of suit therein;

7. For such other and further relief as the court may deem proper; and,

8. For punitive or exemplary damages;

**9.  Plaintiff demands a trial by jury.**

Dated:  December 30, 2019                    BROWN | POORE LLP

                                        By:    *//s// David Poore Turner*
                                            David Poore Turner
                                            Attorneys for Plaintiff

---

-27-